ILLINOIS CENT. R. Co. v. REED.

[74 South. 423, Division B.]

1. RAILROADS. *Operation. Equipment. Headlights. Statute.*

Section 1, chapter 153, Laws 1912, requiring electric headlights on all locomotives running on the main line of railroads is mandatory and is a reasonable police regulation.

2. RAILROADS. *Operation. Negligence. Evidence. Statute.*

Under Code 1906, section 1985, making proof of injury by a locomotive *prima facie* evidence of want of reasonable care and skill, where a railroad failed to comply with Laws 1912, chapter

113 Miss.—35

153, section 1, requiring electric headlights on engines run on main lines, and on a misty night struck and killed a horse there was a *prima facie* case of negligence and in such case where the railroad did not dispute the violation of the headlight statute and did not attempt to show that the animal would have been killed any way, even if the locomotive had been equipped with an electric light, this did not meet the *prima facie* case against it under the statute.

Appeal from the circuit court of Hinds county.

Hon. W. H. Potter, Judge.

Suit by Charles Reed against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes, Wells, May & Sanders,* for appellant.

The court committed manifest error in granting the peremptory instruction. In the recent case of *Y. & M. V. R. R. Co.* v. *Jones*, decided by this court April 13, 1916, and reported 71 So. 309, the court speaking through Cook, P. J., said:

"The defendant showed just how and under what circumtsances the mules were injured by the running train. It appears that the engineman did everything possible to avoid striking the animals after he saw them. We can find nothing in the testimony of plaintiff's witnesses in conflict with the testimony of the engineman. We admit all that plaintiff's evidence tends to prove, and yet we are unable to see, wherein the defendant's witnesses are contradicted. It stands undisputed that the train crew were not negligent when they discovered the mules on the track. There is no obligation on the servants of the company to keep a lookout for trespassing stock."

We submit that the language of the opinion in that case above quoted, is peculiarly applicable to the instant case. Under the facts in the case the court should

have granted a peremptory instruction for the defendant. On the contrary, the court refused to grant such an instruction, but did grant a peremptory instruction to the jury to find for the plaintiff.

If the testimony of defendant's engineer and fireman was true, there was no liability for the killing of the horse. There is nothing in the record to show that they are unworthy of belief. Their testimony is undisputed as to the material facts, and in truth is wholly undisputed, except upon the question as to the state of the weather. If that should be considered material and there was conflict in the testimony of the witnesses on that point, the defendant at least had the right to have the matter passed upon by the jury, but it was denied this right, and the jury was peremptorily instructed to find for the plaintiff.

"It is the province of the jury, as the triers of facts, to ascertain the truth of a case clouded by conflict in testimony." *Scott* v. *Y. & M. V. R. R. Co.,* 16 So. 205; *Dickerson* v. *Y. & M. V. R. R. Co.,* 71 So. 312; *N. O., etc., R. Co.* v. *Folume,* 59 Miss. 284; *Ross* v. *Natchez, etc., R. Co.,* 62 Miss. 23; *Bedford* v. *L. & N. R. Co.,* 65 Miss. 385; *Mobile, etc., R. Co.* v. *Gunn,* 68 Miss. 366; *Kent* v. *L., etc., R. Co.,* 67 Miss. 608.

The court erred in refusing to grant the peremptory instruction for defendant. *Louisville, etc., R. Co.* v. *Tate,* 70 Miss. 348; *Alabama, etc., R. Co.* v. *Boyles,* 37 So. 493; *Alabama, Etc., R. Co.* v. *Stacy,* 35 So. 137; *Mitchell* v. *N. O., Etc., R. Co.,* 39 So. 780.

The only eyewitness was the engineer in charge of the locomotive. He alone states the facts and circumstances of the collision and in the language of Campbell, J., in the case of *Y. & M. V. R. R. Co.* v. *Smith,* 68 Miss. 359, "either the engineer testified falsely, or there was no blame as to the death of the animal. There is nothing to suggest a doubt as to the truthfulness of the engineer's account, and there was nothing for the jury to pass on."

The law places the burden of proof upon the plaintiff, but the court below refused to instruct the jury that in order to recover, it was incumbent upon the plaintiff to make out his case by the preponderance of all of the evidence, and in so refusing, the court below committed manifest error.

Upon the issue of negligence in killing animals, the burden is on the plaintiff, notwithstanding statutes making proof of an injury caused by the running of the locomotive or cars, *prima-facie* evidence of negligence. *I. C. R. R. Co.* v. *Weathersby,* 63 Miss. 581, the court below erred in refusing defendant's instruction number three (Record p. 55). *Hamil* v. *Railroad Co.,* 72 Miss. 39; *Owen* v. *Railroad Co.,* 77 Miss. 142; *Nichols* v. *Railroad Co.,* 83 Miss. 126.

The court below erred in refusing defendant's instruction number four (Record, p. 56). *Yazoo, etc., R. R. Co.* v. *Smith,* 68 Miss. 359.

The court below erred in refusing defendant's instruction number six (Record, p. 56). *Y. & M. V. R. Co.* v. *Jones,* 71 So. 309; *N. O., etc., Co.* v. *Bourgeois,* 66 Miss. 3.

Under the authorities already cited in this brief, the court below erred in refusing each and every one of the defendant's instructions numbered seven to eleven inclusive and found in the record pp. 56 to 58.

For the numerous errors assigned and upon the authority of the decisions of this court herein cited, we submit that this cause should be reversed and remanded.

*Wyley P. Harris,* for appellee.

The court below was correct in granting a peremptory instruction for plaintiff for three reasons: First: The justification offered by the appellant for the injury, and to show the exercise of reasonable skill and care, shows conclusively, that, to prevent injury to stock on its track it was not exercising ordinary care and prudence in the running of its train, such as a prudent man would use under like conditions to prevent injury or destruction.

Second: It was negligence on the part of the appellant's agents to run its train in the nighttime at such a rate of speed that it was impossible by the use of ordinary means and appliances to stop its train within five or six times the distance in which stock or obstructions on the track could be seen by the headlight of the engine.

Third: The appellant was guilty of negligence *per se* in operating its train in violation of the law (chapter 153, Laws of Mississippi 1912), requiring all railroad companies to equip and maintain each locomitive used in main line service with an electric headlight.

The negligence of the appellant railroad company, surrounding the killing of the horse in question, is too apparent to call for extensive argument. For the engineer of a locomotive to so run his train on a dark night, that it goes tearing through space at a speed so great that eighty and two-thirds feet are traversed in a single second, with a head light that would not show obstructions on the track a greater distance than fifty feet in front of the engine, evidences nothing short of a spirit of utter abandonment. There can be no regard for security of life or property found in such wanton conduct. Certainly no ordinarily prudent or discreet person would be guilty of an act so flagrant in its violation of every principal of safety and conservatism. It is wholly repugnant to the idea of reasonable care, prudence and skill due this unfortunate horse. When thought of in connection with the human lives imperiled on that train, it seems criminal. There could be no excuse offered for such conduct. It was negligence of the highest degree. This proof alone would have fully warranted the peremptory charge for plaintiff. *Railroad Company* v. *Moore,* 58 So. 473; *Railroad Company* v. *McGill,* 25 So. 731.

At night the headlight constitutes the eye of the train. By its means alone can the engineer discover obstructions on the track. It constitutes his sole instrument of

warning. In relative importance in the locomotive's equipment it ranks on a par with the brakes, for what protection would brakes afford in avoiding an obstruction which could not be seen.

To be consistent at all with the very requirement of brakes and a headlight in the locomotive's equipment, the railroad company must be limited to a rate of speed which is reasonably safe when compared with the distance objects may be seen upon its tracks, and the distance in which the train may be stopped after such objects are revealed.

The rule is clearly in accordance with the dictates of sound reason and common sense. Consideration for the lives and property intrusted to their care, and, for the many thousand dollars' worth of property yearly destroyed by failure of railroad companies to reasonably observe such a rule, demand its recognition and enforcement. It is wise and salutary, and works no hardship upon any one. *L. & N. R. R. Co.* v. *Kelton,* 21 So. 819; *Western Railway of Alabama* v. *Stone,* 39 So. Opinion at p. 725; *Western Railway of Alabama* v. *Mitchell,* 41 So. 427; *J. L. C. & E. R. Co.* v. *Guest,* 99 S. W. 71.

The third ground upon which the lower court was justified in instructing the jury to find for the plaintiff is, that at the time of the injury, the appellant was operating its locomotive in flagrant violation of the law of this state. Chapter 153 of the Laws of 1912, requires all railroad companies in this state to equip and maintain each and every locomotive used in main line service between sunset and sunrise with a sufficient electric headlight; and further prescribes that any railroad company violating this act, in any respect, shall be liable to indictment as for a misdemeanor.

This same act has been declared constitutional by the supreme court of the United States in the case *A. C. L. R. R. Co.* v. *State of Georgia,* 58 Law Ed. (U. S. supreme court reports), p. 1312.

The evidence in this case shows that the locomotive was not equipped with an electric headlight; that it was equipped with an acetylene gas light.

One who violates the law is a wrong-doer; and the omission of this statutory duty by the appellant was negligence *per se,* such negligence arises as a matter of law. *A. G. S. R. R. Co.* v. *Carney,* 68 So. 166.

In *Railroad Company* v. *Crominarity,* 86 Miss. 467, the court says: "This flagrant violation of two express statutory provisions intended to regulate the operation of trains, and thereby conserve the public safety, constitutes negligence, of course." See also: *Dalstrom* v. *R. R. Co.,* 108 Mo. 538; 11 *Keim* v. *Railroad Company,* 90 Mo. 321.

The only case in which this court has thus far given an expression upon the negligence of the railroad company for failure to comply with the electric headlight law, is the case of *I. C. R. R. Co.* v. *Calhoun,* 68 So. 443.

In conclusion I respectfully submit, that section 1985 of the Code of 1906, as amended by chapter 215 of the Acts of 1912, provides that the proof of injury inflicted by the running of locomotives or cars of railroad companies, shall be *prima-facie* evidence of the want of reasonable care and skill in reference to such injury. This presumption, declared by the sovereignty of the people, called upon the appellant to show the facts and circumstances surrounding the injury; and these facts and circumstances must show that the injury was not due to any want of ordinary care and skill on the part of the appellant's employee in operating the train. Therefore, when the proof—offered to exculpate the appellant—shows conclusively, that at the time of the injury, the appellant's employee was guilty of wanton and gross negligence, in that, he was running the train at a rate of speed so excessive, that eighty and two-thirds feet were traversed in that smallest fraction of time, a second, with the headlight of the locomotive so deficient that objects or obstructions on the track could not be re-

vealed by its rays beyond fifty feet; and the rate of speed at which the train was running at the time was so great as to render it impossible by the use of ordinary means and appliances to stop the train within five to six times the distance objects or obstructions could be seen by the aid of the headlight; and, in addition to these facts, it was operating its locomotive in willful violation of the express mandate of the law, the appellant railroad company has utterly and hopelessly failed to meet the burden imposed upon it. Under such circumstances a peremptory charge for the plaintiff is eminently correct.

ETHRIDGE, J., delivered the opinion of the court.

Charles Reed filed suit against the Illinois Central Railroad Company in a justice of the peace court in the city of Jackson for the killing of one horse, and recovered judgment against the company. An appeal was taken to the circuit court, where the case was tried *de novo,* and resulted in a judgment against the railroad company for the sum of one hundred dollars, from which judgment the company appeals here. It appears that the horse was killed near the station of Tougaloo, in Hinds county, Miss., on the night of January 1, 1915. The plaintiff produced proof sufficient to show that the horse was killed by the train of the appellant and made out a case under the *prima facie* negligence statute. The defendant introduced its engineer, who testified that on the night of the injury he was in charge of the passenger train of the company and struck a horse about a mile this side of Tougaloo station; that the injury occurred just north of the station board, and that he was running about thirty-five miles an hour, and that Tougaloo was a flag stop, and that it was misting rain that night; that he had an acetylene headlight, which is next to an electric headlight in power; that this light does not throw light as far as the electric headlight, but

is next to it in capacity, and that the light in use by the train did not throw a light under then conditions over about fifty to fifty-five feet so that he could see an object distinctly; that when it was not raining it would throw a light about two hundred and fifty feet, and that under conditions existing that night it would take between two hundred and fifty and three hundred feet to bring the train to a stop; that his train was properly equipped with other appliances and was in perfect condition; that when he first saw the horse it was standing in the middle of the track between the rails, and when first seen was about fifty feet in front of the locomotive; that he was looking ahead; that it was a very good roadbed and straight track, slightly upgrade, but after seeing the horse he tried to prevent striking it, but the brake took hold, but not in sufficient time to stop the train. There was conflicting evidence as to the value of the horse, the value ranging from seventy-five dollars to one hundred and fifty dollars. The trial judge gave a peremptory instruction as to the liability in favor of the plaintiff and submitted the question of value to the jury; and this peremptory instruction of liability is complained of as error. The court also refused instructions for the defendant on the questions as to its liability.

Section 1, chapter 153, Laws of 1912, reads as follows:

"Be it enacted by the legislature of the state of Mississippi, that all railroad companies, operating or doing business in this state, are hereby required to equip and maintain each and every locomotive used by such companies to run on its main line, between sunset and sunrise, with a good and sufficient headlight, which shall consume not less than three hundreds watts at the arc, and with a reflector not less than eighteen inches in diameter, and to keep the same in good condition. The word 'main line,' as used herein, means all portions of the railway line not used as yards, spurs and side tracks."

And a violation of the act is made a misdemeanor. A similar statute to this in Georgia was upheld by the United States supreme court in the case of *Atlantic Coast Line R. Co.* v. *Georgia,* 234 U. S. 280, 34 Sup. Ct. 829, 58 L. Ed. 1312. And the proof shows that an electric headlight was a more efficient headlight than the one used in the operation of the train at the time in question. The proof on the part of plaintiff also shows that the train stopped that night at Tougaloo, and this is not disputed by the defendant.

Taking all the facts in the record, we think it is manifest that the railroad company was liable for the value of the animal in question. The statute is mandatory, and, we think, is a reasonable police regulation, and that it was the duty of the railroad company to have its road equipped with this light as required by law.

Under our statute (section 1985 of the Code), commonly called the *prima-facie* statute, there was a *prima-facie* case of negligence.

The defendant undertook to overcome the *prima-facie* case, and in this attempt it was undisputed that the company was violating the headlight statute, and there was no attempt to prove that the animal would have been killed if the locomotive had been equipped with an electric headlight. This being the case, the defendant did not meet the *prima-facie* case. It further appears from the evidence in the case that the train was being operated at too great a rate of speed for the character of headlight used.

Taking the record as a whole, there was no error, and the judgment is affirmed.

*Affirmed.*